IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| JEFFREY SIMPSON, | ) |
| | ) |
| Plaintiff | ) Civil Action No. 2:19-cv-17 |
| v. | ) |
| | ) |
| NORFOLK SOUTHERN | ) |
| RAILWAY COMPANY, | ) By: Hon. Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

**MEMORANDUM OPINION**

Jeffrey Simpson filed this lawsuit on March 28, 2019, alleging that he was injured on the job while working as a conductor for Norfolk Southern Railroad Company (NSRC). First Am. Compl., ECF No. 34. He seeks relief under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (FELA) and the Federal Safety Appliance Act, 49 U.S.C. § 20302(a)(1)(B) (SAA). On July 8, 2020, this court entered a memorandum opinion and order denying NSRC's motion for summary judgment and granting Simpson's motion for partial summary judgment. ECF Nos. 50, 51. NSRC is now before the court seeking to amend or correct the order on motion for partial summary judgment to allow an interlocutory appeal. ECF No. 52. Simpson responded to the motion and NSRC filed a reply. As discussed more fully below, NSRC's motion is **DENIED**.

**BACKGROUND**

On October 29, 2018, Simpson was injured while trying to release a hand brake on a rail car prior to the car's departure. The issue in the cross-motions for summary judgment was whether the rail car was "in use" at the time Simpson was injured. If the car was "in use,"

Simpson could proceed with his lawsuit. If the car was not "in use," summary judgment would be entered for NSRC. The court determined that under relevant law, the rail car was "in use" at the time Simpson was injured.

The arguments in the motions for summary judgment centered around a 2001 regulation promulgated by the Federal Railroad Administration (FRA) as part of the Brake System Safety Standards, which states the following:

> A railroad subject to this part shall not use, haul, permit to be used or hauled on its line, offer in interchange, or accept in interchange any train, railroad car, or locomotive with one or more conditions not in compliance with this part; however, a railroad shall not be liable for a civil penalty for such action if such action is in accordance with § 232.15.[1] For purposes of this part, a train, railroad car, or locomotive will be considered in use prior to departure but after it has received, or should have received, the inspection required for movement and is deemed ready for service.

49 C.F.R. § 232.9(a). In its motion for summary judgment, NSRC contended that this regulation defines "in use" to mean that for purposes of the SAA, a rail car is not in use until after it has received, or should have received, the required inspections and has been deemed ready for service. However, this court rejected that notion, finding that § 232.9 did not abrogate the "in use" multi-function test set forth in Deans v. CSX Transp. Inc., 152 F.3d 326 (4th Cir. 1998) and Phillips v. CSX Transp., Inc., 190 F.3d 285, 288 (4th Cir. 1999), both of which were decided before § 232.9 was enacted.[2] This court concluded that § 232.9 addressed civil penalties imposed by the FRA rather than civil liability. See Mem. Opin., ECF No. 50 at 16.

---

[1] Section 232.15 addresses movement of defective equipment.
[2] The Deans court declined to rely on a bright-line test to determine when a rail car was "in use," finding it better to look at a number of different factors, such as the location of the train at the time of the accident and the activity of the injured party. Deans, 152 F.3d at 329.

NSRC has moved the court, pursuant to 28 U.S.C. § 1292(b), to amend the memorandum opinion and order to allow an interlocutory appeal of the finding that the rail car was not "in use" at the time of the accident. Simpson opposes the motion.

## ANALYSIS

The statute allowing interlocutory appeals provides in relevant part the following:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]

28 U.S.C.A. § 1292(b). As described in the statute, a court may only grant leave to file when (1) the order involves a controlling question of law; (2) about which there is a substantial ground for difference of opinion; and (3) immediate appeal would materially advance the termination of the litigation. Fannin v. CSX Transp., Inc., 873 F.2d 1438, 1989 WL 42583, *2 (4th Cir. 1989) (unpublished) (per curiam). Interlocutory review is an extraordinary remedy not to be granted lightly. Id. A party seeking leave to file an interlocutory appeal must establish all three elements to obtain the appeal. Arenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000). See also Riley v. Dow Corning Corp., 876 F.Supp. 728, 731 (M.D.N.C. 1992) ("The rule requires strict adherence to all statutory requirements before certification will be allowed.")

### I. Controlling Question of Law

There is no set formula for determining what constitutes a "controlling question of law." State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust, 889 F.Supp. 849, 852 (E.D.N.C.

1995). "At the very least, a question is controlling if its incorrect disposition would require a reversal of a final judgment for further proceedings." Id. (citing 16 Wright, et al., Federal Practice and Procedure § 3930 at 159). Conversely, a question clearly is not controlling if the litigation would necessarily continue regardless of how the question is decided. Id. Courts often seek a middle ground, finding that a question might be controlling even when its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court and time and expense for the litigants. Id.

The parties agree that the question of whether the rail car was "in use" is a controlling issue in this case. "Section 1 of FELA provides that '[e]very common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.'" Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994) (quoting 45 U.S.C. § 51). The SAA, which imposes safety requirements on railroads, makes it unlawful for a railroad to use railcars that are not equipped with certain mandated safety features, including hand brakes. 49 U.S.C. § 20302(a). The SAA does not create an independent cause of action for those injured because of a violation of the act, but "for railroad employees injured because of a SAA violation, FELA provides the cause of action." Phillips v. CSX Transp., Inc., 190 F.3d 285, 288 (4th Cir. 1999) (per curiam). The SAA safety requirements apply only to railcars that are actually "in use." Phillips, 190 F.3d at 288. "[T]he purpose of the "in use" limitation is to give railcar operators the opportunity to inspect for and correct safety appliance defects before the SAA exposes the operators to strict liability for

such defects." Id. For purposes of the SAA, the question of whether a train is "in use" is a question of law for the court to decide. Id.

If the court certified this case for an interlocutory appeal and the Fourth Circuit found that the rail car was not "in use" under the SAA, the case would be dismissed. On the other hand, if the Fourth Circuit found that the rail car was "in use," the case would proceed to trial. Thus, the court agrees the issue of whether the car was "in use" is a controlling question of law in this case.

## II. Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion arises only if the disagreement on controlling law exists between courts rather than parties. United States ex rel. A1 Procurement, LLC v. Thermcor, Inc., 173 F.Supp.3d 320, 323 (E.D. Va. 2016). Additionally, a simple disagreement between courts will not merit certification; rather, a substantial ground for disagreement may arise when there is a novel and difficult issue of first impression, or if there is a circuit split and the controlling circuit has not commented on the conflicting issue. Id. (internal citations omitted). Nevertheless, the mere fact than an issue is one of first impression or that there is a lack of unanimity is insufficient to meet the test. Wyeth v. Sandoz, Inc., 703 F.Supp.2d 508, 527 (E.D.N.C. 2010). The district judge must analyze the strength of the arguments in opposition to the challenged ruling when determining whether there is a substantial ground for dispute. In re Flor, 79 F.3d 281, 284 (2d Cir. 1996). In order to find a substantial ground for a difference of opinion, there must be a genuine doubt as to "'whether the district court applied the correct legal standard in its order.'" Wyeth, 703 F.Supp.2d at 527 (quoting Consub Del. LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 309

(S.D.N.Y. 2007), aff'd, 543 F.3d 104 (2d Cir. 2008), abrogated in part on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009)).

NSRC makes two arguments that this case presents a substantial ground for difference of opinion: (1) no federal court of appeals has considered whether 49 C.F.R. § 232.9(a) controls when a rail car is "in use" under the SAA and (2) this court's decision on the issue differs from the decision in Clark v. Norfolk Southern Railway Co., Civ. No. 12-C-222 (Cir. Ct. Mingo Cnty. W.Va. Sept. 21, 2015). However, the court is not persuaded by either argument.

NSRC is correct that no federal appeals court has considered whether application of § 232.9(a) controls when a rail car is "in use." Nevertheless, a "substantial ground for difference of opinion does not exist merely because there is a dearth of cases." White v. Nix, 43 F.3d 374, 378 (8th Cir. 1994). While identification of a sufficient number of conflicting and contradictory opinions would provide a substantial ground for disagreement, a dearth of cases does not constitute a substantial ground for difference of opinion. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010) (citing White and Union County, Iowa v. Piper Jaffray & Co., Inc., 525 F.3d 643, 647 (8th Cir. 2008)). See also Atrion Networking Corp. v. Marble Play, LLC, 31 F.Supp.3d 357, 360 (D.R.I. 2014) (quoting White and Phillip Morris, Inc. v. Harshbarger, 957 F.Supp. 327, 330 (D. Mass. 1997)) (noting that although there exists a substantial ground for difference of opinion when a matter involves difficult and pivotal questions of law not settled by controlling authority, the difference does not exist merely because there is a dearth of cases).

The fact that no federal court of appeals has considered this issue does not support a conclusion that there is substantial ground for difference of opinion on the question. Indeed, given that the regulation has been in effect for almost twenty years and has been the subject of litigation in only a handful of cases, an argument could be made that there is little difference of opinion on the issue. In Manion v. Spectrum Healthcare Resources, 966 F.Supp.2d 561, 568 (E.D.N.C. 2013), the court noted that in addition to a paucity of case law interpreting the statute at issue, the court also was not convinced that other courts presented with the same question would not decide it the same way. This court is similarly unconvinced that other courts presented with the question raised by § 232.9 would decide it differently. Accordingly, the lack of appellate court rulings on this issue, without more, is insufficient to show that there exists substantial ground for difference of opinion on the matter.

The court finds NSRC's second argument similarly unpersuasive. NSRC is correct that this court's decision differs from the decision in Clark, the Mingo County, West Virginia decision. However, "'[a] court is not bound to find reasonable cause for disagreement whenever authorities lack unanimity.'" Howes, 889 F.Supp. at 852 (quoting Allied Princess Bay Co. # 2 v. Atochem N. Am., Inc., No. CV–91–4146, 1992 WL 135235, *3 (E.D.N.Y. May 29, 1992)). NSRC concedes that Clark is the only case that conflicts with the determination of this court that 49 C.F.R. § 232.9(a) did not abrogate the multi-factor test used to determine when a rail car is "in use." While the court is respectful of the decision in Clark, the fact that there is a disagreement between courts as to the applicability of § 232.9(a) does not compel a determination that there exists a substantial ground for difference of opinion. Moreover, it does not appear that the plaintiff in Clark raised the argument that § 232.9 applies only to

7

situations involving civil penalties rather than civil liability and the court did not address it. See Clark, No. 12-C-222 at 3-5.

The only other court known to discuss the regulation in this context is the Minnesota Court of Appeals in Nygaard v. BNSF Ry. Co., No. A12-1566, 2013 WL 2460198, *7 n. 4 (Minn. Ct. App. June 10, 2013), where the court applied the totality of the circumstances test and commented that § 232.9 applies only to civil penalties and not civil liabilities for injuries. Also, as pointed out in the memorandum opinion, other courts analyzing the "in use" issue under the SAA after promulgation of § 232.9 have continued to apply the multi-factor "in use" test, albeit without discussion of the regulation. See Ditton v. BNSF Ry. Co., No. CV 12-6932 JGB, 2013 WL 2241766 (C.D. Cal. May 21, 2013); Solice v. CSX Transp., Inc., Civil Action No. 11-1288, 2012 WL 1196668 (E.D. La. April 10, 2012); Bruno v. CSX Transp. Inc., No. 1:08-cv-867, 2011 WL 13206042 (N.D. N.Y. May 10, 2011); Miller v. CSX Transp., No. 2:06-0113, 2007 WL 1094389 (S.D. W.Va. April 10, 2007);[3] Kobe v. Canadian Nat'l Ry. Co., Civ. No. 06-3439 (RHK/RLE), 2007 WL 2746640, at *5 (D. Minn. Sept. 18, 2007); Underhill v. CSX Transp. Inc., No. 1:05-CV-196-TS, 2006 WL 1128619, at *5 (N.D. Ind. April 24, 2006); and Thomas v Reading, Blue Mountain and No. Ry. Co., No. Civ. A. 01-5843, 2003 WL 21949156 (E.D. Pa. Aug. 14, 2003). The court concludes that its disagreement with Clark is insufficient to find that a substantial ground for differences of opinion exists among courts as to whether § 232.9 abrogated the multi-function test set out in Deans and Phillips.

---

[3] Miller's claim was brought under the Federal Locomotive Inspection Act (LIA) rather than the SAA, but the "in use" analysis is the same. Miller, 2007 WL 1094389 at *3, n. 1.

NSRC cites Gilmore v. Jones, No. 3:18-cv-00017, 2019 WL 4417490 (W.D. Va. Sept. 16, 2019), in support of its argument that a substantial ground for difference of opinion exists in this case. However, the difference of opinion in Gilmore involved disagreement among multiple courts. There, the court found that a substantial ground for difference of opinion existed on an issue of personal jurisdiction. Id. at *1. The court found two Fourth Circuit cases and a Supreme Court decision to be "particularly salient" to the issue and discussed them at length in its memorandum opinion granting in part and denying in part the defendants' motion to dismiss. Id. at *4. The court "synthesized the cases addressing the specific jurisdiction analysis" in the context of the facts of the case against the backdrop of more generalized holdings on personal jurisdiction analysis to arrive at a standard. Id. at *5.

In its subsequent order granting interlocutory appeal, the court found its approach to the question was not uniform in the Fourth Circuit and cited three district court cases that had reached the opposite conclusion. The court concluded that "[e]videnced by differing approaches taken by district courts within the Fourth Circuit, there is a 'substantial difference of opinion' on this question, as understood under § 1292(b)." Id. at *6.

In contrast to Gilmore, no court in the Fourth Circuit, or in any other federal circuit, has reached a different conclusion on the applicability of § 232.9 to the "in use" issue presented in this case. Thus, Gilmore does not compel a finding that a substantial difference of opinion exists on this question such that the issue is appropriate for interlocutory appeal.

NSRC also cites Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681, 688 (9th Cir. 2011), where the Ninth Circuit noted that courts traditionally will find a substantial ground for difference of opinion where novel and difficult questions of first impression are presented. As

9

true as that may be, the issue raised by § 232.9(a) is not particularly novel or difficult. As noted in the memorandum opinion, the language of the regulation addresses civil penalties and does not mention civil liability such as that alleged by Simpson. In addition, a finding that the regulation applies only to civil penalties imposed by the FRA is supported by comments in the Federal Register addressing the regulation. See Mem. Opin., ECF No. 50 at 16-17.

While NSRC believes this finding is incorrect, "'mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal.'" In re Health Diagnostic Laboratory, Inc., Nos. 3:17-cv-HEH, 2017 WL 2129849, at *4 (E.D. Va. May 16, 2017) (quoting Nat'l Cmty. Reinvestment Coal. V. Accredited Home Lenders Holding Co., 597 F.Supp. 2d 120, 122 (D.D.C. 2009)). See also Lynn v. Monarch Recovery Management, Inc., 953 F.Supp.2d 612, 626 (D. Md. 2013) (finding for purposes of § 1292(b), the litigants' positions are irrelevant; what matters is whether there is a difference of opinion among the courts). The court does not find that the issue is so novel or difficult that it warrants granting of an interlocutory appeal.

### III. Material Advancement of the Litigation

Even if NSRC carried its burden of showing a substantial ground for differences of opinion, it also must show that the interlocutory appeal would materially advance the litigation. In support of that assertion, NSRC argues that deciding the "in use" issue now will avoid the need for a later appeal on the issue; that if the Fourth Circuit rules in its favor the case will be terminated and there will be no need for a trial or later appeal; that the case will be expensive to try because collectively the parties have listed eleven liability experts and thirteen medical

experts; and that the uncertainty of the "in use" issue makes the case difficult to settle and more likely to be tried.

The Fourth Circuit stated in Fannin that "[T]he kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." Fannin, 1989 WL 42583 at *5. The fact that an interlocutory appeal might save pre-trial and trial effort and expense is not determinative because that can be said of any interlocutory appeal. Id. (citing Palandjian v. Pahlavi, 782 F.2d 313, 313, 314 (1st Cir. 1986)).

It is not clear in this case that resolution of an interlocutory appeal will be completely dispositive of this litigation. While a finding by the Fourth Circuit that Section 232.9 governs "in use" determinations would lead to the dismissal of the case, if the court were to find otherwise, the case would proceed to trial. Nor is it clear that that the uncertainty of the "in use" issue makes the case difficult to settle and more likely to be tried. Uncertainty about the outcome of litigation exists in every settlement negotiation. Considering all the circumstances, the court finds that NSRC has not met its burden of showing that the granting of an interlocutory appeal would materially advance the litigation.

The court is mindful of the Fourth Circuit's admonition in Fannin that interlocutory review is an extraordinary remedy and not to be granted lightly. Id. at *2. The court is further mindful that it is bound to "'protect the integrity of the congressional policy against piecemeal appeals.'" Id. (quoting Switzerland Cheese Ass'n v. Horne's Market, Inc., 385 U.S. 23, 25 (1966)). Having weighed all the factors, the court concludes that interlocutory appeal is an inappropriate remedy in this case and **DENIES** NSRC's motion.

## **CONCLUSION**

Based on the foregoing, NSRC's motion to amend or correct the order on motion for partial summary judgment to allow an interlocutory appeal, ECF No. 52, is **DENIED**.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: October 9, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.10.09 17:28:28 -04'00'

Michael F. Urbanski
Chief United States District Judge